91 P.3d 136 (2004)
121 Wash.App. 889
STATE of Washington, Appellant,
v.
Dale M. MOORE, Respondent.
No. 21926-7-III.
Court of Appeals of Washington, Division 3, Panel Four.
June 3, 2004.
*137 Kevin M. Korsmo, Deputy Prosecuting Attorney, Spokane, WA, for Appellant.
Janet G. Gemberling, Attorney at Law, Spokane, WA, for Respondent.
SWEENEY, J.
Earlier sentencing courts failed to tell Dale Moore that he could not possess a firearm following his convictions. Those courts also suggested that he could put the matter behind him after he reached the age of majority. The question before us is whether the trial judge in the present case abused his discretion by dismissing an unlawful firearm possession charge based on the earlier sentencing courts' failure to warn Mr. Moore that he could not possess a firearm, when these failures are coupled with other implicit assurances that he could possess a firearm. We conclude that the judge's exercise of discretion is amply supported by the requirement that Mr. Moore be advised that he could not possess firearms (RCW 9.41.047(1)) and the assurances implicit in the earlier sentencing judge's discussion. We therefore affirm the dismissal.

FACTS
A deputy sheriff stopped David Johnson's pickup. Mr. Johnson was driving with a suspended license. Dale Moore was a passenger. The deputy arrested Mr. Johnson for third degree driving with license suspended and searched the pickup incident to that arrest. He found a pistol under the passenger seat. Mr. Moore told the deputy that someone gave him the pistol. And he put it under the seat. The State charged Mr. Moore with one count of first degree unlawful possession of a firearm based on a prior residential burglary conviction.
Mr. Moore moved to dismiss that charge because he had not been advised by the sentencing judge as required by RCW 9.41.047(1)[1] that his juvenile adjudications made him ineligible to possess a firearm. The trial judge agreed and dismissed the charge with appropriate findings of fact and conclusions of law.
PREDICATE OFFENSES
Mr. Moore's criminal history includes four juvenile offenses in the last seven months of 1995: taking a motor vehicle without permission, second degree burglary, and two separate residential burglaries. In each case, he pleaded guilty and signed a document that included the following statement:
I have been informed and fully understand that my plea of guilty and the court's acceptance of my plea will become part of my criminal history. I have also been informed and fully understand that if the offense(s) is a felony and I was 15 years of age or older when the offense was committed, then the plea will remain part of my criminal history when I am an adult if I commit another offense prior to my twenty-third birthday.

Clerk's Papers (CP) at 24, 33, 42, 52 (emphasis added). See former JuCR 7.7 (108 Wash.2d 1131 (1987)) (setting forth form for written statement of juvenile on plea of guilty). Mr. Moore was under 15 years old at the time of these adjudications.
At his first disposition on May 4, 1995, when Mr. Moore pleaded guilty and was sentenced for second degree burglary, the court asked Mr. Moore:
I've got a four page document which we call Statement of Juvenile on Plea of Guilty and it contains a description of what you have done as well as your rights and what you can be punished for and it has your signature on it, dated 11/4. *138 CP at 61 (emphasis added). The court had the following exchange:
COURT: Now the sentence that we can impose is 3 to 6 months supervision, 16 to 32 hours of community service, 2 to 4 days of confinement, a twenty five hundred dollar fine and a hundred dollar penalty assessment and any loss that may have occurred as a result of your conduct. Do you understand that?
[MR. MOORE]: Yes.
COURT: Have you ever been convicted of a crime before?
[MR. MOORE]: No.
COURT: You understand that if you had been convicted of one and we didn't know about it, that you could be brought back here and re-sentenced. Do you understand that?
[MR. MOORE]: Mmm, mm.
COURT: Dale, do you also understand that by being convicted of this offense that you are going to develop what we call a criminal history, that if you break the law again, it could result in a longer sentence? Do you understand that?
[MR. MOORE]: Yes, yeah.
CP at 63-64 (emphasis added).
Mr. Moore next appeared on September 18 and 25, 1995, for juvenile plea and sentencing hearings on charges of taking a motor vehicle without permission and residential burglary. At his plea hearing, after Mr. Moore gave a statement for the factual basis of his plea, the court said:

I am going to find that you have been advised of your rights and the nature of the charges and the consequences of pleading guilty and that you choose to enter your pleas of guilty to these charges.
Report of Proceedings (RP) at 76 (emphasis added). At the time of sentencing, the court told Mr. Moore, "I hope you can put this behind you now and start living a twelve year old life instead of being in detention." CP at 83.
Mr. Moore appeared for his final juvenile adjudication for plea and sentencing hearings on a residential burglary charge on December 14 and 21, 1995. At the plea hearing the court had the following exchange:
COURT: Has [your attorney] explained it to you, so you understand what pleading guilty means?
[MR. MOORE]: Yes.
COURT: Ok. Among other things it means that there will not be a trial on this charge, you will be admitting to a crime. Is that what you want to do?
[MR. MOORE]: Yes.
CP at 91 (emphasis added). At sentencing, the court told Mr. Moore, "Start living a life like a fourteen year old ought to [live] like, instead of like a thirty year old criminal." CP at 101.

DISCUSSION
The court dismissed this case on authority of CrR 8.3(b).[2] The defendant must show (1) arbitrary action or governmental misconduct, and (2) prejudice materially affecting the defendant's right to a fair trial. State v. Wilson, 149 Wash.2d 1, 9, 65 P.3d 657 (2003). The governmental misconduct referred to in CrR 8.3(b) does not require evil or dishonest acts; simple mismanagement is enough. State v. Michielli, 132 Wash.2d 229, 239, 937 P.2d 587 (1997).
Here, the court concluded that Mr. Moore's due process rights were violated because the court failed to advise him that he could not possess firearms and because he was misled into believing that his juvenile convictions would not have a disqualifying effect on his future rights to possess a firearm.
Dismissal under CrR 8.3(b) is discretionary and so is subject to review for abuse of discretion only. State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003). A trial court abuses its discretion when its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. State v. Blackwell, 120 Wash.2d 822, 830, 845 P.2d 1017 (1993).
*139 The predicate offense here for first degree unlawful firearm possession was residential burglary. At the time of the sentencing on that crime, former RCW 9.41.047(1)(a) (1994) required:
At the time a person is convicted of an offense making the person ineligible to possess a firearm, ... the convicting ... court shall notify the person, orally and in writing, that the person may not possess a firearm unless his or her right to do so is restored by a court of record.
The juvenile court was then required to advise Mr. Moore orally and in writing that he could no longer possess a firearm. RCW 9.41.047(1). This was not done. And the court's failure constituted governmental mismanagement under CrR 8.3(b). State v. Leavitt, 107 Wash.App. 361, 371, 27 P.3d 622 (2001).
The next question is whether this failure materially prejudiced Mr. Moorethat is, whether he was misled. We recognize a due process claim under the circumstances where the court has misled the defendant into believing that his conduct was not prohibited. Id. at 371-72, 27 P.3d 622.
In Leavitt, the sentencing court for the underlying predicate conviction failed to give the defendant the statutorily required notice prohibiting firearm possession beyond a one-year probation period. And the court, through its words and actions, misled the defendant into believing that any restriction on firearm possession was limited to his one-year probationary period. Division Two held that Mr. Leavitt's subsequent conviction for illegal possession of firearms violated due process:
Similarly, here, the predicate sentencing court was the "voice of the State" speaking to Leavitt, or failing to speak to Leavitt, about the constraints on his ability to possess firearms. The 1998 sentencing court had the authority and issued a written order that was binding upon Leavitt. Leavitt relied in reasonable good faith upon the terms of the written order.
Id. at 371, 27 P.3d 622. And the Leavitt court announced the rule we apply today:
[W]e hold that where a defendant can demonstrate actual prejudice arising from a sentencing court's failure to comply with the statute's mandate to advise him about the statutory firearm-possession prohibition, RCW 9.41.047 cannot serve as the basis for convicting him of unlawful firearm possession.
Id. at 373, 27 P.3d 622. The sentencing court need not make express affirmative assurances on the status of the convicted defendant's rights. Id. at 372, 27 P.3d 622. Actions, inactions, or a combination of the two may be enough to implicate due process rights. Id.
Here, Mr. Moore was not advised of the loss of his rights, and affirmatively he was told that he could put the ordeal behind him if he stayed out of trouble. CP at 83, 101.[3] The court concluded that this was enough to warrant dismissal of the possession of a firearm charge. That for us is a decision exercised on tenable grounds and for tenable reasons. Blackwell, 120 Wash.2d at 830, 845 P.2d 1017. The judge explored only one predicate residential burglary in the findings. But it is apparent that he considered all of Mr. Moore's previous appearances before the court.[4]
Finally, the earlier sentencing courts took pains to explain his legal obligations, the loss of other privileges and prospective consequences, including the creation of a criminal *140 history and community supervision. On one occasion the court required that Mr. Moore mind his mom. The pronouncement of these other terms and consequences coupled with the failure to indicate the loss of eligibility to possess firearms, when considered with the earlier assurance that the announced terms were all he was facing, supports the judge's exercise of discretion here to dismiss. Leavitt, 107 Wash.App. at 363, 367, 27 P.3d 622.
The State argues that there is no prejudice here because Mr. Moore's defense was that he was merely watching the gun for another person. But he did not have to actively seek out the gun to trigger the State's charge. See, e.g., State v. Jeffrey, 77 Wash.App. 222, 227, 889 P.2d 956 (1995) (defendant had constructive possession for unlawful firearm possession charge when he knew it had been placed under his couch). And the question before us is whether he can be charged at all, not the nature of his defense.
The State also characterizes the earlier judicial assurances as platitudes rather than statements on which Mr. Moore could rely. The judge here found otherwise. CP at 144 (Finding of Fact 8).
Finally, the court found that:
The Defendant was prejudiced when he was led to believe, by the juvenile court, that when he turned 21 he did not have to worry about the fact he had been convicted of juvenile crimes, so long as he did not commit any more crimes while he was under age fifteen.
CP at 144 (Finding of Fact 6) (emphasis added). Based on this finding, the State argues that Mr. Moore had no right to rely on the predicate courts' statements because he was 19 years old at the time of the unlawful firearm possession. But it is clear that this finding was essentially a scrivener's error, based on the court's initial misstatement of the law when he gave his oral opinion. RP at 22. Shortly after that first statement, he properly stated that because the predicate offenses were committed before he was 15, they would not remain part of his criminal history once he turned 18. RP at 22. See former RCW 9.94A.030(12)(b) (1995).
The dismissal of the charge here was not an abuse of the judge's discretion and we affirm the decision.
WE CONCUR: KATO, C.J., and SCHULTHEIS, J.
NOTES
[1] RCW 9.41.047(1) requires the sentencing court to inform an offender that he or she may not possess a firearm if the conviction makes the offender ineligible to possess one.
[2] "The court, in furtherance of justice ... may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." CrR 8.3(b).
[3] The court stated: "[I]t appears to this Court that Mr. Moore in this case is, in fact, prejudiced in that he was led to believe that at some point in his life when he became an adult, in this case when he turned 21, that he didn't have to worry about the fact that he had been convicted of these crimes in the past, that if he had lived his life in a decent manner, didn't commit any more violations while he was under age 15 if you're over 15 I think they carry through until age 23, if I remember correctly, if you didn't commit any more violations." RP at 22.
[4] The parties argued from and the trial judge commented on portions of the records from each of the appearances rather than just one of the residential burglaries. And there is some implication from the record that the persistent failure to give the statutory warning on each one of those appearances as well as the cumulative effect of the failure favored Mr. Moore's position.