137 P.3d 872 (2006)
133 Wash.App. 636
STATE of Washington, Respondent,
v.
Jacob L.T. MINOR, Appellant.
No. 33193-4-II.
Court of Appeals of Washington, Division 2.
June 27, 2006.
*874 Brett Dino Colacurcio, Grays Harbor County Prosecutors Office, Montesano, WA, for Respondent.
Peter B. Tiller, The Tiller Law Firm, Centralia, WA, for Appellant.
VAN DEREN, A.C.J.
¶ 1 Jacob L.T. Minor appeals his adjudication for first degree unlawful possession of a firearm, arguing that (1) a previous court failed to inform him that he was not allowed to possess a firearm following a felony conviction; and (2) the trial court erred in imposing a manifest injustice disposition because the record did not support it, it was clearly excessive, and the disposition procedure is invalid under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Finding no error, we affirm.

FACTS
¶ 2 In December 2004, Ocean Shores police officer Christian Iverson was dispatched to Richard Frost's home to investigate the theft of Frost's .38 caliber Smith and Wesson handgun. Frost said that he suspected that Minor had stolen the gun because Frost's daughters had heard rumors at school that Minor had stolen the gun and then sold it.
¶ 3 Subsequently, Katie Robinson, who came into contact with Iverson because she had been arrested on another matter, told Iverson that she had seen Minor with a handgun. She said she saw Minor with a .38 caliber, fully loaded, black gun in the spring or fall of 2004 while the two were at a friend's home. At Minor's trial, Robinson testified that Minor told her to lie about seeing the gun and "not to get him in trouble." Report of Proceedings at 9.
¶ 4 Joe Palm also saw Minor possessing a gun. Palm reported to detective Russ Fitts that in September or October 2004, Minor showed him a .38 caliber revolver and tried to sell it to him. Palm said he refused to buy the gun because he was on parole and was, therefore, ineligible to possess a firearm. Palm did not testify at Minor's trial.
¶ 5 The State charged Minor with two counts of first degree unlawful possession of a firearm, in violation of RCW 9.41.040(1)(a). In count I, the State charged that Minor, having previously been convicted of a serious offense, residential burglary, possessed a black firearm in September or October 2004.[1] Count II charged that Minor, having previously been convicted of a serious offense, residential burglary, possessed a firearm in *875 the spring or summer of 2004 in Robinson's presence.
¶ 6 Minor testified that he did not show Robinson a gun and that he never told her to lie. He also testified that no one had ever told him that as a convicted felon he was not allowed to possess a gun. Furthermore, on his judgment and sentence for his predicate conviction, the box that stated that he was not allowed to possess a firearm was not checked. And Minor did not sign the judgment and sentence nor did he review it with his attorney.
¶ 7 At a bench trial in juvenile court, the court found Minor guilty of count II. The court ordered a disposition diagnostic report.
¶ 8 The predisposition diagnostic report outlined Minor's criminal history, drug use history, treatment history, behavior, and family history. Minor, the youngest of 11 children, began using nicotine at age five. By age eight, he began smoking marijuana and drinking alcohol. By age 11, he began regularly using marijuana and alcohol and began using methamphetamine. He began using valium at age 13. Minor has also used ecstasy, mushrooms, and LSD and has inhaled formaldehyde. He has been diagnosed with Attention Deficit Hyperactivity Disorder, Bi-Polar Disorder, and Conduct Disorder.
¶ 9 Minor's first three criminal offenses occurred from June 2000 to September 2001, and included possession of a dangerous weapon and two counts of fourth degree assault. He was given diversion for all three charges.
¶ 10 In August 2002, the court granted Minor a chemical dependency disposition alternative for three counts of fourth degree assault and one count of minor in possession. The court suspended Minor's 26-week manifest injustice disposition, but Minor did not comply with the conditions of his suspended disposition and reoffended in September 2002, by obstructing a police officer. The court revoked the suspended disposition and ordered Minor to serve the remainder of the 26-week disposition plus 30 days for the obstruction charge. He was released on parole in March 2003. His 2003 parole was revoked four times, and the State issued four arrest warrants for him while he was on parole. Since 2001, Minor has violated parole nine times and the State has issued 10 arrest warrants against him.
¶ 11 In November 2003, Minor was found guilty of residential burglary. The court granted a manifest injustice disposition upward and sentenced Minor to 30 to 40 weeks. In 2004, Minor underwent drug treatment as part of an eight-week program at Maple Lane. After completing the program, he was sent to a group home in Olympia but was expelled a short time later. In December 2004, Minor served time for a parole violation and was transitioned to another group home. Minor has participated in other drug treatment programs and has been prescribed medication, which he has refused to take.
¶ 12 Minor has had behavioral problems both in and out of detention. He has a pending fourth degree assault charge for throwing a screwdriver at his sister, who says that she is afraid of him and his violent outbursts. He has a history of assaults in detention and in the community, as well as at home and at school. Minor has been working toward his GED, but he rarely attends school. When he does attend, he is disruptive, disrespectful, and noncompliant. One teacher reported that Minor only comes to school so he can make drug deals.
¶ 13 At the time of the disposition for the firearm charge, Minor had a pending disposition for one count of fourth degree assault and one count of minor in possession, to which he had pleaded guilty. Based on the diagnostic report, the diagnostic coordinator recommended that the court impose a manifest injustice disposition of 52 to 60 weeks for the firearm conviction on count II. The court sentenced Minor to 190 to 238 weeks because (1) Minor had "a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement;" (2) "[t]here are other complaints which have resulted in diversion or a finding or plea of guilty which are not included as criminal history;" (3) "[t]he standard range disposition is clearly too lenient considering the seriousness of [Minor's] prior adjudications;" (4) Minor "is a continuing threat to *876 the community [and] himself;" and (5) Minor "is in need of more substance abuse counseling." Clerk's Papers at 27.
¶ 14 Minor appeals.

ANALYSIS

I. NOTICE OF PROHIBITION TO CARRY A FIREARM
¶ 15 Minor argues that at the time of disposition for his residential burglary conviction the trial court failed to advise him that he was prohibited from thereafter possessing a firearm and that without such an instruction we must vacate the unlawful firearm possession conviction. The State acknowledges that the record is devoid of evidence that Minor received written notification of his loss of firearm rights and that without a record of the oral proceedings, we must assume that he also did not receive oral notification. But the State argues that lack of notice here does not warrant reversal. We agree with the State.
¶ 16 Former RCW 9.41.040(1)(a)(2003)[2] states that a person, whether adult or juvenile, is guilty of first degree unlawful possession of a firearm if the person "owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted in this State or elsewhere of any serious offense as defined in this chapter." RCW 9.41.010(12)(a) lists any crime of violence as a serious offense and RCW 9.41.010(11)(a) lists burglary as a crime of violence.
¶ 17 Knowledge of the illegality of firearm possession is not an element of the crime. State v. Leavitt, 107 Wash.App. 361, 368, 27 P.3d 622 (2001). The State need only prove that the defendant knew that he possessed a firearm. Leavitt, 107 Wash.App. at 368, 27 P.3d 622. But RCW 9.41.047(1), which governs the restoration of the right to possess a firearm, states that when a person is convicted of a serious offense that makes him ineligible to possess a firearm, the court must "notify the person, orally and in writing, that the person must immediately surrender any concealed pistol license and that the person may not possess a firearm unless his or her right to do so is restored by a court of record."
¶ 18 Although ignorance of the law is generally not a defense, we must balance that long-standing principle with the "inherent unfairness of ... [a] sentencing judge [ ] inadvertently misleading a defendant about his legal obligations such that the defendant relied on this misinformation to his detriment." Leavitt, 107 Wash.App. at 368, 27 P.3d 622. Due process requires dismissal of an unlawful firearm possession charge when a court misleads a defendant into believing that his conduct was not prohibited and the defendant shows prejudice. State v. Carter, 127 Wash.App. 713, 720, 112 P.3d 561 (2005). "The sentencing court need not make express affirmative assurances on the status of the convicted defendant's rights. Actions, inactions, or a combination of the two may be enough to implicate due process rights." State v. Moore, 121 Wash.App. 889, 896, 91 P.3d 136, review denied, 154 Wash.2d 1012, 114 P.3d 657 (2005).
¶ 19 Several cases have dealt with whether subsequent convictions for possession of a firearm must be reversed because the trial court failed to inform the defendant about the long-term restriction on possessing a firearm following a felony conviction.
¶ 20 In Moore, Division Three of this court held that the trial court's failure to inform Moore that he could no longer possess a firearm constituted governmental mismanagement under CrR 8.3(b). 121 Wash. App. at 895, 91 P.3d 136. The court found that Moore had been prejudiced because the predicate juvenile dispositional judge had affirmatively told him that "he could put the ordeal behind him if he stayed out of trouble." Moore, 121 Wash.App. at 896, 91 P.3d 136.
¶ 21 Similarly, in Leavitt, we held that the trial court misled Leavitt when it suspended his sentence so long as he abstained from certain conduct for one year, including not possessing firearms for one year. 107 Wash. App. at 363, 27 P.3d 622. The trial court did not inform Leavitt that the prohibition *877 against possession of firearms could extend longer than the one year. Leavitt, 107 Wash.App. at 363, 27 P.3d 622. Thus, we reversed Leavitt's unlawful possession of a firearm conviction, holding that Leavitt demonstrated actual prejudice when the predicate sentencing court misled him and failed to advise him of the statutory firearm-possession prohibition. Leavitt, 107 Wash.App. at 372-73, 27 P.3d 622.
¶ 22 But in State v. Blum, we refused to reverse a conviction for unlawful possession of a firearm where a predicate Colorado court failed to inform Blum that he was prohibited from possessing a gun. 121 Wash.App. 1, 3, 85 P.3d 373 (2004). We held that lack of knowledge of the law was no defense and that the State did not have a duty to inform Blum because his conviction was from another state. Blum, 121 Wash. App. at 4, 85 P.3d 373. We refused to apply Leavitt because the trial court did nothing to mislead Blum. Blum, 121 Wash.App. at 5, 85 P.3d 373.
¶ 23 Here, the court failed to comply with RCW 9.41.047 when it did not check the box on the judgment and sentence indicating that Minor was prohibited from possessing a firearm. But Minor fails to demonstrate any reliance on the trial court's oversight. At oral argument, Minor conceded that the record did not indicate that he looked at or relied on the judgment and sentence to determine whether he could possess a firearm. And unlike in Moore and Leavitt, the trial court here did nothing to affirmatively indicate to Minor that he could possess a firearm.
¶ 24 We agree with Minor that this reading of RCW 9.41.047 imposes no sanction for the court's failure to comply with the statute's express oral and written notice requirements. But we can find no consequence the legislature spelled out for violating this statute. It is not a judicial function but, rather, a legislative task to prescribe a remedy for failing to inform a convicted felon of the loss of the right to possess firearms.
¶ 25 Thus, without a legislatively prescribed sanction, we hold that Minor's ignorance of the law is not a defense. See Leavitt, 107 Wash.App. at 368, 27 P.3d 622. And because Minor cannot show prejudice based on affirmative conduct by the trial court, we affirm his conviction.

II. MANIFEST INJUSTICE DISPOSITION
¶ 26 Minor next argues that (1) the record does not support the imposition of a manifest injustice disposition; (2) the disposition was excessive; and (3) Blakely prohibits manifest injustice dispositions. 542 U.S. at 296, 124 S.Ct. 2531.
¶ 27 A court may impose a disposition outside the standard range when it determines that a disposition within the standard range would "effectuate a manifest injustice." State v. T.E.C., 122 Wash.App. 9, 17, 92 P.3d 263 (2004) (quoting RCW 13.40.160(2)). RCW 13.40.230(2) governs appellate review of a manifest injustice disposition:
To uphold a disposition outside the standard range, the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient.

1. Evidence Relied on by the Juvenile Court
¶ 28 Minor argues that the evidence in the record does not support a finding of manifest injustice under RCW 13.40.230.
¶ 29 To impose a manifest injustice disposition the trial court must rely on clear, cogent, and convincing evidence. State v. P.B.T., 67 Wash.App. 292, 301, 834 P.2d 1051 (1992) (quoting RCW 13.40.160(1)). We review the trial court's findings of fact under a clearly erroneous standard and will reverse only if substantial evidence fails to support the court's conclusion. T.E.C., 122 Wash. App. at 18, 92 P.3d 263 (relying on State v. S.H., 75 Wash.App. 1, 9, 877 P.2d 205 (1994), overruled on other grounds, State v. Sledge, 83 Wash.App. 639, 645, 922 P.2d 832 (1996)). In determining whether a manifest injustice *878 disposition is proper, the trial court may look at statutory and non-statutory factors, including whether the juvenile is at a high risk to reoffend. T.E.C., 122 Wash.App. at 17, 92 P.3d 263.
¶ 30 Here the court made findings that (1) Minor had a recent criminal history or had failed to comply with the conditions of a recent dispositional order; (2) had other complaints against him; (3) a standard range disposition was too lenient; and (4) Minor was a continuing threat to himself and the community.
¶ 31 The evidence in the record is clear that Minor has an extensive and continuous criminal history and that he has repeatedly violated the terms of his dispositions and paroles, which indicate that he is a high risk to reoffend. Further, Minor's continuous drug use began at a very young age. While incarcerated, Minor participates in drug programs but when he is released he fails to comply with treatment requirements. And at the time of this disposition, Minor had two other pending offenses. He rarely attended school for educational purposes and was disruptive and uncooperative when he was at school.
¶ 32 This evidence is clear, cogent, and convincing and supports the trial court's manifest injustice disposition and we hold that the trial court did not err.

2. Length of Disposition
¶ 33 Minor argues that 190 to 238 weeks was an excessive manifest injustice disposition under RCW 13.40.230(2).
¶ 34 A manifest injustice disposition is excessive if it cannot be justified by any reasonable view of the record. T.E.C., 122 Wash.App. at 17, 92 P.3d 263 (quoting State v. Tauala, 54 Wash.App. 81, 87, 771 P.2d 1188 (1989)). Once a court has determined a manifest injustice disposition proper, it has broad discretion in determining the appropriate sentence. State v. M.L., 134 Wash.2d 657, 660, 952 P.2d 187 (1998).
¶ 35 In M.L., our Supreme Court found a manifest injustice disposition excessive where the trial court incarcerated 10-year-old M.L. until he turned 21. 134 Wash.2d at 660-61, 952 P.2d 187. M.L. had no previous criminal record and the State, M.L.'s counselor, the defense, and the juvenile probation officer all recommended a one-year disposition. M.L., 134 Wash.2d at 661, 952 P.2d 187. The Court held that, although the trial court was not bound by the recommendations of others, "the imposition of a sentence which is in excess of 10 times as long as the longest sentence recommended is excessive when imposed upon a 10-year-old boy." M.L., 134 Wash.2d at 661, 952 P.2d 187. The court found that such a sentence did not further the goals of the Juvenile Justice Act of 1977. M.L., 134 Wash.2d at 661, 952 P.2d 187.
¶ 36 Here, unlike in M.L., Minor has an extensive criminal record and he is 16, not 10. Furthermore, the record supports the sentence because of Minor's lengthy and continuous criminal history, his substance abuse, and his refusal to participate in drug treatment outside incarceration. The record also indicates that Minor has better success controlling himself when he is in a structured setting. Thus, a lengthy disposition will likely benefit him because he can continue his education in a structured setting and he can participate in long-term drug treatment. We hold that Minor's manifest injustice disposition was not excessive.

III. BLAKELY V. WASHINGTON

¶ 37 Finally, Minor argues that the United States Supreme Court's decision in Blakely renders RCW 13.40.160[3] unconstitutional.
¶ 38 Blakely clarified that a defendant has a Sixth Amendment right to have a jury, not a judge, determine facts that *879 warrant an exceptional sentence. 542 U.S. at 313, 124 S.Ct. 2531. The Court based its analysis on the historical foundation of the Sixth Amendment. But juveniles do not have a Sixth Amendment right to a jury trial. State v. Schaaf, 109 Wash.2d 1, 16, 743 P.2d 240 (1987). And juvenile proceedings are generally not considered criminal prosecutions under the Sixth Amendment. State v. Tai N., 127 Wash.App. 733, 738, 740, 113 P.3d 19 (2005), review denied, State v. Nguyen, 156 Wash.2d 1019, 132 P.3d 735 (2006).
¶ 39 Further, Division One of this court in Tai N. refused to extend Blakely to juvenile trials. 127 Wash.App. at 738, 113 P.3d 19. It found that the "unique rehabilitative nature of juvenile proceedings" made judges and not juries the appropriate fact finders in juvenile proceedings. Tai N., 127 Wash.App. at 739, 113 P.3d 19 (quoting State v. J.H., 96 Wash.App. 167, 186-87, 978 P.2d 1121 (1999).)
¶ 40 We agree with Division One and, thus, we hold that Blakely does not prohibit a judge in a juvenile trial court from imposing a manifest injustice sentence.
¶ 41 Finding no error, we affirm.
We concur: BRIDGEWATER and HUNT, JJ.
NOTES
[1] This count was dismissed without prejudice when Palm could not appear to testify and it is not an issue on appeal.
[2] Laws of 2005, ch. 53, § 26.
[3] RCW 13.40.160(2) states:

If the court concludes, and enters reasons for its conclusion, that disposition within the standard range would effectuate a manifest injustice the court shall impose a disposition outside the standard range, as indicated in option D of RCW 13.40.0357. The court's finding of manifest injustice shall be supported by clear and convincing evidence.
A disposition outside the standard range shall be determinate and shall be comprised of confinement or community supervision, or a combination thereof. When a judge finds a manifest injustice and imposes a sentence of confinement exceeding thirty days, the court shall sentence the juvenile to a maximum term, and the provisions of RCW 13.40.030(2) shall be used to determine the range. A disposition outside the standard range is appealable under RCW 13.40.230 by the state or the respondent. A disposition within the standard range is not appealable under RCW 13.40.230.