[No. 79003-5.   En Banc.]
Argued October 9, 2007.     Decided January 17, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. JACOB L.T. MINOR, *Petitioner*.

*Peter B. Tiller* (of *The Tiller Law Firm*), for petitioner.

*H. Steward Menefee, Prosecuting Attorney*, and *Brett D. Colacurcio, Deputy*, for respondent.

*Sheryl G. McCloud* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 C. JOHNSON, J. — This case involves a challenge to a first degree unlawful possession of a firearm juvenile court adjudication, where the predicate offense court failed to give oral and written notice of the prohibition on firearm possession as required by former RCW 9.41.047(1) (1996). We reverse the Court of Appeals and hold that by not providing the statutorily required notice by not checking the paragraphs on the preprinted order prohibiting possession of firearms, the predicate offense court violated statute and affirmatively misled petitioner Jacob L.T. Minor. We vacate Minor's adjudication for first degree unlawful possession of a firearm and dismiss the underlying charge.

## FACTUAL AND PROCEDURAL HISTORY

### Predicate Offense

■ ¶2 Minor pleaded guilty to residential burglary in juvenile court, and a preprinted order on adjudication and disposition was entered on November 6, 2003.[1] In the order, the following paragraph appeared as follows, unchecked:

---

[1] Minor's birth date is October 13, 1988.

4.18 [ ]   FELONY FIREARM PROHIBITION: Respondent shall not use or possess a firearm, ammunition or other dangerous weapon until his or her right to do so is restored by a court of record. The court clerk is directed to immediately forward a copy of the respondent's driver's license or identicard, or comparable information, along with the date of conviction, to the Department of Licensing. RCW 9.41.047.

Former RCW 9.41.047(1),[2] enacted in 1994,[3] requires a convicting court to give notice of the prohibition on the right to possess firearms:

At the time a person is convicted of an offense making the person ineligible to possess a firearm . . . the convicting or committing court *shall notify the person, orally and in writing, that the person . . . may not possess a firearm* unless his or her right to do so is restored by a court of record.

(Emphasis added.) The statute mandates that, where required, notice shall be given.

## *Current Offense*

¶3  A person is guilty of first degree unlawful possession of a firearm "if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted in this state or elsewhere of any serious offense as defined in this chapter." Former RCW 9.41.040(1)(a) (2003).[4] Residential burglary qualifies as a "[c]rime of violence," which is included within the definition of a "[s]erious offense" for purposes of first degree unlawful possession of a firearm, RCW 9.41.010(11)(a), (12)(a); therefore, by law, at the time of his adjudication for residential burglary, if the statute had been followed, Minor would have been prohibited from possession of firearms.

---

[2] Former RCW 9.41.047(1), *amended by* LAWS OF 2005, ch. 453, § 2.

[3] LAWS OF 1994, 1st Spec. Sess., ch. 7, § 404.

[4] Former RCW 9.41.040(1)(a) (2003), *amended by* LAWS OF 2005, ch. 453, § 1.

¶4 On January 24, 2005, Minor was charged in juvenile court with two counts of unlawful possession of a firearm in the first degree. In count I, the State charged Minor, having previously been adjudicated of residential burglary, with having in his possession a black revolver that he displayed to Joe Palm in the fall of 2004.[5] Clerk's Papers (CP) at 1. In count II, the State charged Minor, having previously been adjudicated of residential burglary, with having in his possession a black .38 revolver that he displayed to Katie Robinson in the spring or summer of 2004. CP at 1-2. Robinson testified that while at a friend's home with a group of people, Minor bragged about robbing a house and showed Robinson a fully loaded .38 revolver and subsequently told her to lie about seeing it and "not to get him in trouble." CP at 5-6; Report of Proceedings (RP) at 8-9.

¶5 Minor was found guilty of count II by bench trial on March 24, 2005. CP at 26. The standard range for this offense is a 15 to 36 week commitment to the juvenile rehabilitation administration (JRA) of the Department of Social and Health Services. CP at 20. The JRA provided a predisposition diagnostic report dated March 30, 2005, which outlined Minor's criminal, family, substance abuse, and educational histories, and recommended a manifest injustice disposition of 52 to 60 weeks. CP at 29. The trial judge imposed a manifest injustice disposition of 190 to 238 weeks, effectively incarcerating Minor until age 21.[6]

¶6 In his appeal to Division Two of the Court of Appeals, Minor argued that at the time of disposition for his residential burglary adjudication, the trial court failed to advise him that he was prohibited from thereafter possessing a firearm and that without such an instruction, his adjudication should be vacated. *State v. Minor*, 133 Wn. App. 636, 642, 137 P.3d 872 (2006). Also, Minor argued that

---

[5] Count I was dismissed without prejudice and is not an issue on appeal.

[6] In his petition for review, Minor challenged the manifest injustice disposition, arguing it was not supported by the record and that the length of the disposition was clearly excessive. Because we reverse the Court of Appeals and vacate Minor's adjudication, we do not address this challenge.

the record did not support the imposition of a manifest injustice disposition, such disposition was excessive, and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), renders manifest injustice dispositions unconstitutional.

¶7 The Court of Appeals recognized that the predicate offense court failed to comply with RCW 9.41.047(1) when it did not check the appropriate paragraph on the order. The court affirmed the adjudication, however, finding that petitioner failed to demonstrate any reliance on the oversight or prejudice resulting from any affirmative acts on the part of the trial court that misled him into believing he could possess firearms. *Minor*, 133 Wn. App. at 644-45.

## ISSUE

Whether the predicate offense court's failure to check paragraphs in the order notifying petitioner he was prohibited from possessing firearms affirmatively misled petitioner to believe possession was lawful.

## ANALYSIS

*Notice of Prohibition To Possess a Firearm*

¶8 In 2003, Minor was adjudicated of residential burglary, a crime falling within the class of crimes for which the legislature has prohibited firearm possession. Former RCW 9.41.010(11)(a), (12)(a). Pursuant to the statute, at adjudication, the juvenile court "shall notify the person, orally and in writing, that the person . . . may not possess a firearm." Former RCW 9.41.047(1). Both parties agree that Minor was not given oral or written notice of his loss of firearms rights: the predicate offense court failed to check the appropriate paragraph on the order, and because the record is silent on oral notification, the assumption is no such notice was given. The inquiry centers, rather, on whether failure to check the appropriate paragraph on the

order affirmatively misled Minor into believing he could possess firearms.

¶9 The parties disagree as to whether Minor was affirmatively misled and, under these circumstances, as to what remedy is appropriate for this statutory violation. While the State admits a mistake was made, it asserts that unless there is active misrepresentation, which here there was not, the court cannot provide a remedy. Minor petitions for reversal and dismissal of his firearms adjudication, arguing that the court affirmatively misled him when it failed to check the appropriate section of the order. The mere fact that he was in possession of the firearm, Minor argues, shows reliance on the court's failure. Petitioner argues that since the statute mandates notification, violation of the statute requires a remedy.

¶10 In support of Minor's argument, Amicus Curiae Washington Association of Criminal Defense Lawyers (WACDL) cites to a number of out-of-state cases supporting the proposition that failure to provide the required notice, when such notice is contained in the order, affirmatively represents that such material is inapplicable. Namely, WACDL cites to a Minnesota Court of Appeals case, *Whitten v. State*, 690 N.W.2d 561, 562-63, 565 (Minn. Ct. App. 2005), where the district court discharged Whitten from probation, advised him that full citizenship and civil rights were restored, but failed to check the box on the preprinted discharge order informing him he could not possess a firearm. The Minnesota Court of Appeals found that the district court order "effectively advised" Whitten that his rights were intact; thus, state and federal due process clauses prohibited his conviction for unlawful possession of a firearm. *Whitten*, 690 N.W.2d at 566.

¶11 WACDL also argues that we have granted relief to parties whose statutory rights were violated by failure of a government actor to comply with statutory notice requirements. *See In re Pers. Restraint of Vega*, 118 Wn.2d 449, 823 P.2d 1111 (1992) (we held that where the State made no attempt to give petitioner notice of the amended one-year

limitation on filing a personal restraint petition, as required by statute, petitioner was not bound by the one-year limitation).

¶12 Ignorance of the law is generally not a defense, and Washington case law provides that knowledge of the illegality of firearm possession is not an element of the crime. However, the lower courts have carved a narrow exception for where a governmental entity has provided affirmative, misleading information. *See, e.g., State v. Leavitt*, 107 Wn. App. 361, 371 n.13, 27 P.3d 622 (2001) (finding Washington courts have rejected the general ignorance or mistake of law defense, but recognizing mistake of law created by misleading information from a governmental authority).

¶13 In *Leavitt*, the Court of Appeals, Division Two, established a rule that has been followed by later appellate decisions: that a conviction for unlawful possession of a firearm is invalid where defendant can demonstrate actual prejudice resulting from a sentencing court's failure to comply with former RCW 9.41.047(1). *Leavitt*, 107 Wn. App. at 373; *see also State v. Moore*, 121 Wn. App. 889, 895, 91 P.3d 136 (2004) (adopting the rule from *Leavitt* and recognizing a due process claim "under the circumstances where the court has misled the defendant into believing that his conduct was not prohibited"), *review denied*, 154 Wn.2d 1012, 114 P.3d 657 (2005). In *Leavitt*, the predicate offense court did not require Leavitt to relinquish his concealed weapons permit or firearms; did not advise him that the firearms prohibition applied and extended beyond a one-year probationary period; and in the conditions, requirements, and instructions from the Department of Corrections, left blank the box next to the paragraph explaining the firearms prohibition, thereby suggesting that this particular condition did not apply to him. The court concluded such combined actions and inactions misled Leavitt to reasonably understand the prohibition to be limited to one year and, thus, reversed his firearms convictions. *Leavitt*, 107 Wn. App. at 363, 372.

¶14 In contrast, in *State v. Carter*, 127 Wn. App. 713, 720-21, 112 P.3d 561 (2005), the Court of Appeals, Division Three, concluded that while the predicate offense court failed to inform Carter according to statute, Carter was not "affirmatively misled." The court considered the absence of a notification provision in the order upon which the unlawful firearms possession charge was based in rejecting Carter's due process claim. *Carter*, 127 Wn. App. at 720-21.

¶15 Though the State argues that Minor has provided no evidence of being misled by the predicate offense court, by failing to check the appropriate paragraph in the order, the predicate offense court not only failed to give written notice as required by former RCW 9.41.047(1) but also, we conclude, affirmatively represented to Minor that those paragraphs did not apply to him. Had the order omitted any language regarding the firearms prohibition, as in *Carter*, the State's argument would be more persuasive.

¶16 The legislative history behind the notice requirement contained in RCW 9.41.047(1) shows that the requirement was one provision in a bill aimed at violence prevention, implying the legislature's concern with addressing the problem of violence without interfering with a citizen's right to possess and use firearms. ENGROSSED SECOND SUBSTITUTE H.B. (ESSHB) 2319, 53d Leg., Reg. Sess. (Wash. 1994). Indeed, in enacting this statute, the legislature balanced the concern with escalating violence, which some commentators blamed on the "ready availability of firearms," with the concern that restricting firearm availability will infringe upon the right of a law-abiding citizen to keep and bear arms. FINAL B. REP. on ESSHB at 2.

¶17 RCW 9.41.047(1) requires the convicting court to provide oral and written notice. The statute is unequivocal in its mandate. However, the statute provides no remedy for what, in this instance, is a clear statutory violation, nor can we find a remedy between that which the State and Minor request. The presence of a notice requirement shows the legislature regarded such notice of deprivation of firearms rights as substantial. Relief consistent with the purpose of

the statutory requirement must be available where the statute has been violated.

¶18 Applying this analysis to the facts of the case, we find that relief must be granted. There was no onerous burden placed on the State to provide notice. Minor was present at his residential burglary disposition hearing. And at the time of the disposition hearing, Minor had just turned 15 years old. It is reasonable to believe a person of that age would not necessarily know the degrees of crimes or how their crime may impair their rights. It is also reasonable to believe that any person in Minor's position would rely on the representations of the court.

¶19 The predicate offense court violated former RCW 9.41.047(1) when it failed to notify Minor he was prohibited from possessing firearms and failed to check the box indicating the felony firearm prohibition. We find that the court issued a written order that was binding on Minor and that affirmatively represented to him the firearm prohibition did not apply to him.[7] The only remedy appropriate for the statutory violation is to reverse the current conviction.

## CONCLUSION

¶20 We reverse the Court of Appeals' holding affirming Minor's first degree unlawful possession of a firearm adjudication, vacate the adjudication, and dismiss the underlying charge.

ALEXANDER, C.J.; SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ.; and BRIDGE, J. PRO TEM., concur.

¶21 MADSEN, J. (concurring) — The parties agree that petitioner Jacob Minor was not given oral or written notice of loss of firearm rights, the court that sentenced him for

---

[7] Because we find that the predicate offense court failed to meet the statutory notice requirement and affirmatively misled petitioner, we need not address the question of whether failure to comply with former RCW 9.41.047(1) alone warrants reversal.

the predicate offense failed to notify him of the loss of firearm rights, and a box next to a preprinted notification of the loss of firearm rights on the order on adjudication and disposition for the predicate offense was not checked. Under these circumstances, I concur in the majority's conclusion that Mr. Minor was affirmatively misled into believing he had not lost these rights. The appropriate remedy is, as the majority holds, reversal of the adjudication for unlawful possession of a firearm.

¶22 However, failure to check a box on a preprinted order on adjudication form will not always result in reversal. The crux of the matter is whether the individual was affirmatively misled, because "[i]gnorance of the law is generally no defense, although a narrowly defined class of cases has determined that affirmative, misleading information from a governmental entity is a violation of due process." *State v. Sweeney*, 125 Wn. App. 77, 83, 104 P.3d 46 (2005) (citing *State v. Leavitt*, 107 Wn. App. 361, 371, 27 P.3d 622 (2001)).

¶23 For example, in *State v. Moore*, 121 Wn. App. 889, 896, 91 P.3d 136 (2004), the Court of Appeals affirmed the trial court's dismissal of an unlawful possession of a firearm charge because the defendant was not advised of loss of firearm rights, and the trial court affirmatively misled him into believing those rights were not lost when the court told him that "he could put the ordeal behind him if he stayed out of trouble." In *Leavitt*, 107 Wn. App. at 372-73, the Court of Appeals reversed a conviction for unlawful firearm possession where the totality of the court's actions and inactions affirmatively misled the defendant into believing that his firearm possession restriction was limited to one year.

¶24 But if the individual has actual knowledge of the law or actual notice of the loss of firearm rights, in whatever form, the individual cannot legitimately claim he or she justifiably believes that firearm rights were not lost and therefore cannot claim to have been misled. An example of facts that would lead to the conclusion that the individual

had actual knowledge or notice is found in *State v. Carter*, 127 Wn. App. 713, 112 P.3d 561 (2005). There, the defendant was charged with unlawful possession of a firearm based on a prior juvenile burglary offense, but in the interim between the juvenile offense and the possession charge the defendant had been convicted of a felony and notified at that time that he was disqualified from possessing firearms. *Id.* at 721.

¶25 Individuals who have actual knowledge of the law or actual notice of the loss of firearm rights cannot show they were affirmatively misled by a failure to advise of the loss of firearm rights, and they are not entitled to reversal of an adjudication or conviction of unlawful possession of a firearm.

¶26 I concur in the majority opinion.

BRIDGE, J. PRO TEM., concurs with MADSEN, J.